<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAZIMIERZ M. ANDRANOWSKI : | |
| : | |
| Plaintiff, : | Civ. No. 05-184 (GEB) |
| : | |
| v. : | **MEMORANDUM OPINION** |
| : | |
| JO ANNE B. BARNHART, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

**<u>BROWN, Chief Judge</u>**

This matter comes before the Court upon the appeal of plaintiff Kazimierz M. Andranowski ("Plaintiff") from the Commissioner of Social Security's ("Commissioner") final decision that Plaintiff was not entitled to disability insurance benefits under the Social Security Act ("the Act"). The Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will grant Plaintiff's appeal and remand for further proceedings consistent with this judgment.

**I. BACKGROUND**

    A. <u>Initial Application and Determination</u>

On November 6, 2001, Plaintiff filed an application for disability insurance and supplemental security income under Title II and Part A of Title XVIII of the Act. (Record ("R.")

1

at 46-48).  Plaintiff based his application on heart, liver, and gall bladder problems, as well as injury to his shoulder and arm resulting from a tumor removal.  (R. at 60).  Plaintiff alleged that these ailments commenced in 1984 and that he became unable to work on April 23, 2001.  (Id.).  On April 26, 2002, the Social Security Administration ("SSA") denied Plaintiff's claim.  (R. at 27).  Plaintiff filed a request for reconsideration on June 3, 2002, which was subsequently denied on November 12, 2002.  (R. at 32-33).  On December 11, 2002, Plaintiff filed a Request for Hearing by an Administrative Law Judge.  (R. at 36).

      B. The Hearing

On September 22, 2003, Administrative Law Judge Ralph J. Muehlig ("ALJ") conducted a hearing to determine whether Plaintiff was disabled and thus entitled to benefits.  (See R. at 298).  Plaintiff was the sole witness at the hearing and testified with the assistance of a Polish language interpreter.  (R. at 296-97).  His attorney, Ms. Linda Ershow-Levenberg, began by submitting a statement into the record on behalf of Plaintiff which outlined the following impairments:  (1) severely limited use of the right arm caused by muscle wasting after removal of a tumor from the shoulder in 1995; (2) chronic pain resulting from spinal conditions including herniation, impingement of L3 nerve root, a Tarlov cyst, and neural foraminal stenosis; (3) moderate depression; and (4) chronic liver disease and hepatitis.  (R. at 305-06).  Plaintiff's counsel argued that Plaintiff was unable to perform his past relevant work, had only residual functional capacity for sedentary work, and should be found to be disabled under grid rule 201.17.  (R. at 305-07).

During questioning by the ALJ, Plaintiff testified that he was last employed by Quality

First Contracting Corp. as a van driver before leaving his job to travel to Poland for a divorce in March, 2001. (R. at 310-12). Plaintiff testified that when he returned from Poland in September, 2001, he had gall bladder surgery, and was unable to return to work as a driver because he was unable to shift the gears. (R. at 313-14). Plaintiff testified that before his employment with Quality First, he was employed by Micro Cast, where he sorted parts, for a year and a half until he was laid off. (R. at 314-15). Plaintiff testified that he had not sought work since his surgery due to pain. (R. at 323).

      Plaintiff testified that he was able to use his right arm at his last three jobs because muscle atrophy stemming from his 1995 shoulder surgery had not yet occurred. (R. at 328-29). Plaintiff stated that he was unable to use his right arm for daily activities and had problems shaving, eating, and lifting with his right arm. (R. at 329).

      Plaintiff testified that following his gall bladder surgery, he received disability and unemployment benefits. (R. at 333). After his temporary benefits ended, he attempted to return to his position as a van driver at Quality First, but they would not hire him. (R. at 333-34). Plaintiff stated that he sought employment at a factory, but was rejected because he could not use his right arm. (R. at 334). Plaintiff explained that due to herniated discs in his back, he had strong pain that radiated throughout his lower extremities and required that he alternate between sitting and standing. (Id.). Plaintiff further testified that he was unable to use his right arm at all, and was unable to lift heavy parts or push and pull gears. (R. at 334-35).

      C. <u>The ALJ Decision and the Objective Medical Evidence Cited in the Opinion</u>

      The ALJ issued a decision on October 16, 2003, in which he determined that Plaintiff was

not disabled within the meaning of the Act. (R. at 15-24).  The ALJ concluded that Plaintiff could return to his past relevant work as a van driver or machine operator.  (R. at 22-23).  The ALJ's opinion summarized the evidence in the record, which included Plaintiff's various medical examinations.  (See R. at 19-20).  In March 2006, Plaintiff complained of heart palpitations and intermittent chest pain and underwent testing.  (R. at 19).  A cardiac exam and EKG yielded normal results, and a physical exam revealed a well-developed man in no apparent distress.  (Id.).  A cardiac catheterization was performed and the left ventriculography revealed overall left ventricular systolic function that was in the lower limits, but no mitral regurgitation was reported.  (Id.).  No residual weakness was reported, but Plaintiff experienced a small transient ischemic attack prior to leaving the lab.  (Id.).  Approximately one month later, Plaintiff was examined and no acute distress was revealed.  (Id.).  No ENT inflammation was noted and the claimant's chest and heart sounds were symmetric, clear, and regular.  (Id.).  The ALJ noted that Plaintiff had a well-healed right cervical scar and atrophy of his right shoulder with right arm weakness.  (Id.).  A chest and abdomen CT scan was performed in September of 2000, which revealed mild cardiomegaly without pericardial effusion and two lesions on the liver.  (Id.).  Plaintiff reported a history of alcohol abuse and was noted to suffer all the signs and symptoms of alcoholic pancreatitis.  (Id.).  Plaintiff underwent a cholecystectomy on October 1, 2001, which he tolerated well.  (Id.).

According to the findings of the ALJ, Plaintiff reported a history of cancer in the right shoulder, which was operated on in 1995 in Poland, and reported continued pain and weakness stemming from the surgery.  (R. at 20).  Plaintiff reported that he was unable to lift his right shoulder and that he was taking pain medication that was prescribed to him in Poland.  (Id.).  An

examining physician's report, dated November 16, 2001, reported that although Plaintiff suffered a frozen right shoulder, he could return to substantial gainful activity as of April 1, 2001. (R. at 19). In January of 2002, an independent consultative examination was performed by Dr. Patel in response to Plaintiff's complaints of back pain, dizziness, shortness of breath, and chest pain. (R. at 20). Upon exam, Dr. Patel noted that Plaintiff was in no acute distress. (Id.). He further noted that Plaintiff had a normal gait and that his chest was symmetrical bilaterally. (Id.). An EKG revealed a normal sinus rhythm with supraventricular premature beats and an abnormal Q-wave. (Id.). Plaintiff's reflexes were within normal limits, but had muscle wasting in his right shoulder. (Id.). No gross neurological deficits were reported. (Id.). In Dr. Patel's opinion, Plaintiff retained the ability to perform fine and gross movements in both hands and, despite the noted muscle wasting in his right shoulder, Plaintiff's right hand was essentially normal. (Id.).

The ALJ further found that MRIs were performed on Plaintiff's cervical and lumbar spine in February of 2002 and revealed a right lateral L3-4 disc herniation impinging on the exiting right L3 nerve root; a large central disc herniation at L4-5; a small herniation at L5-S1; a Tarlov cyst at S2-3; and right foraminal stenosis at C3-4 and C4-5. (Id.). Plaintiff testified that he was capable of performing his household tasks and activities of daily living. (Id.).

Finally, the ALJ found that an independent psychological evaluation was performed on Plaintiff. On April 10, 2002, Dr. Gutierrez evaluated Plaintiff and noted that he had an alleged history of depression beginning in September of 2001 when his father died. (Id.). Plaintiff reported that he was divorced because his wife abandoned him, and he travels back and forth from the US to Poland to visit his children. (Id.). He reported that he tries to walk daily. (Id.). In Dr. Gutierrez's opinion, Plaintiff was moderately depressed but mentally capable of handling

his own benefits.  (Id.).

      Based on the evidence, the ALJ determined that Plaintiff was not disabled within the meaning of the Act, despite the existence of a severe impairment.  (R. at 21).  The ALJ found Plaintiff's subjective claims that his back and shoulder pain and weakness precluded all significant work activity was not fully credible, and that the objective medical evidence could not reasonably produce the extent of the alleged subjective complaints.  (Id.).  Accordingly, the ALJ found that Plaintiff had the residual functional capacity to perform past relevant work.

      The ALJ described the SSA's five-step sequential evaluation process to be followed in determining disability.  (R. at 21); see 20 C.F.R. § 404.1520.  The ALJ found that Plaintiff was not engaging in substantial gainful activity and that he had a severe impairment, thus satisfying steps one and two.  (R. at 21).  The ALJ found that Plaintiff's impairment did not meet or equal one of the listed impairments found in Appendix 1, Subpart P of 20 C.F.R. § 404.  (Id.).  The ALJ further determined that Plaintiff retained the residual functional capacity to perform work involving lifting and carrying objects weighing up to 50 pounds occasionally and 25 pounds frequently; sitting, standing, and walking for about six hours in an eight hour day; and the full range of medium work.  (R. at 22).  With the specified residual functional capacity, the ALJ found Plaintiff able to perform past relevant work as a machine operator or van driver, thus ending the five-step inquiry at step four.  (Id.).

    D. <u>Plaintiff Appeals</u>

      On or about November 21, 2003, Plaintiff requested that the Appeals Council review the ALJ's decision.  (R. at 14).  The Appeals Council denied the request for review on June 25, 2004.

(R. at 10-12).  Plaintiff submitted additional medical evidence to the Appeals Council and requested a review of the ALJ's decision, which was again denied on November 22, 2004.  (R. at 5-9).  Plaintiff then filed this civil action with the Court, seeking review of the SSA's denial of Social Security Disability and Supplemental Security Income benefits for lack of disability.

**II. DISCUSSION**

  A. <u>Standard of Review for Social Security Appeals</u>

  The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record."  42 U.S.C. § 405(g); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means more than "a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate."  <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999) (quoting <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995)).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently."  <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001) (citing <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999)).

  The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence."  <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983) (emphasis in original).  The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits.  <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (internal citation omitted).  The

7

Third Circuit has held that access to the ALJ's reasoning is indeed essential to a meaningful court review.  Fargnoli, 247 F.3d at 42.  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

      B. Standard for Awarding Benefits

A claimant may not receive benefits under the Act unless he or she first meets statutory insured status requirements.  A claimant must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

      Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability.  20 C.F.R. § 404.1520.  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied.  Id.  If the claimant is not employed, the

ALJ proceeds to step two and determines whether the claimant has a severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  A claimant who does not have a severe impairment is not disabled.  Id.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1, Subpart P of 20 C.F.R. § 404 ("the Listing").  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  Id.; 20 C.F.R. § 404.1520(d).  The third step must be more than a conclusory statement; the ALJ must discuss the evidence presented and include an analysis of whether and why the claimant's impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000).

     If it is determined that the impairments do not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of:  (1) the claimant's capabilities despite limitations imposed by an impairment (residual functional capacity); and (2) whether those limitations prevent the claimant from returning to work performed in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the claimant's residual functional capacity, together with his age, education, and past work experience.  20 C.F.R. § 404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing his past work or some other type of work in the national economy because of his impairments.

The application of these standards involves shifting burdens of proof. The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits. Id. If the claimant carries the burden and demonstrates that the impairments meet or equal those within the Listing, he satisfies his burden of proof and is automatically entitled to benefits. Id. If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents his from performing his past work." Id. Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why he is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the claimant is "able to perform work available in the national economy." Id. The step five analysis "can be quite fact specific." Burnett, 220 F.3d at 126.

C. Plaintiff Alleges Four Errors in the ALJ's Determination

Plaintiff alleges four errors in the ALJ's determination: (1) he performed an incomplete step three analysis preventing judicial review; (2) he failed to properly assess Plaintiff's credibility in regard to claims of pain within step three; (3) he failed to fully develop the record of Plaintiff's mental impairment; and (4) the ALJ's finding that Plaintiff has the residual functional capacity to return to his past work was not based on substantial evidence. (Pl's Br. 11-22). The Court agrees with Plaintiff with respect to the first two points, and thus will not reach the third and fourth points.

D. <u>The ALJ Erred in the Step Three Analysis and the Evaluation of Plaintiff's Pain</u>

The Court finds two errors in the step three analysis performed. First, in his step three analysis, the ALJ failed to discuss the specific listings he considered and identify the elements that were lacking from those listings. He also failed to assess whether the *combined* effect of all of Plaintiff's impairments were medically equal to any listed impairment. Secondly, the ALJ failed to discuss all of the medically relevant evidence, specifically Plaintiff's back MRIs (R. at 208, 210), before determining that the medical evidence could not reasonably produce Plaintiff's subjective complaints of pain.

1. <u>The ALJ Failed to Perform a Complete Step Three Analysis</u>

The ALJ provided the following brief explanation for the step three analysis:

> Although the claimant does suffer from an impairment that is in fact "severe," there do not exist any medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4. Particular attention was given to the sections in listing 1.00, but the specified criteria required of the listing were not demonstrated by medical evidence.

(R. at 21).

An ALJ must provide a reviewing court with more than a conclusory statement that the claimant does not meet the listings. <u>Burnett</u>, 220 F.3d at 119. Although the ALJ is not bound to use particular language or adhere to a particular format, there must be sufficient development of the record and explanation of the findings to permit an adequate judicial review. <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004). In this case, the ALJ did not identify which specific listing or listings he considered or which elements were lacking from each listing. Although this is not error per se, it appears that Plaintiff's impairments are elements of multiple specific listings

and could arguably meet at least one of the listings.[1]  A discussion of the ALJ's reasoning, including the specific listings considered and the elements lacking from applicable listings, is necessary to ensure meaningful review.  The Third Circuit has held that without this detailed analysis by the ALJ, "we cannot discern the basis for the ALJ's finding at step three of the sequential evaluation."  Smith v. Barnhart, 54 Fed. Appx. 83, 86 (3d Cir. 2002).  The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding.  Id.

Furthermore, the step three analysis requires that the ALJ "review the symptoms, signs, and laboratory findings about [the claimant's] impairments to determine whether the *combination* of [claimant's] impairments is medically equal to any listed impairment."  20 C.F.R. § 404.1526(a) (emphasis added).  When a claimant has multiple impairments which individually do not meet the level of severity required by the Listings, the ALJ must consider the aggregate effect of claimant's impairments to determine whether, combined, they meet or equal the severity of a listed impairment.  Burnett, 220 F.3d at 122.  There is no indication in the ALJ's opinion that he considered the combined effect of all of Plaintiff's impairments, including Plaintiff's frozen shoulder, cardiac, liver and gallbladder conditions, impairments of the spine, the associated pain, and Plaintiff's minor mental impairments.  Upon remand, the ALJ should perform an analysis of the possibility that the combined impairments equal the severity of one of the listings.

---

[1] Listing 1.04 refers to disorders of the spine and is most similar to Plaintiff's symptoms.  Whether Plaintiff's symptoms meet or equal this listing is not to be decided by this Court.  Instead the Court remands for a full analysis of this and any other reasonably applicable listings.

2. <u>The ALJ Failed to Consider Objective Evidence Supporting Plaintiff's Subjective Claims of Pain</u>

In making his decision, the ALJ assessed Plaintiff's subjective complaints of pain, which Plaintiff described in the hearing as "very strong pain so I cannot sit for a long time and I can either not stand for a long time because the pain is going through my whole leg until the toes." (R. at 334).  The ALJ found that the medical evidence revealed objective findings that could not reasonably produce the extent of the subjective complaints of pain, and found that Plaintiff's complaints of disabling back and shoulder pain were not fully credible.  (R. at 21).  The ALJ listed six factors (adapted from 20 C.F.R. § 404.1529) to be taken into consideration when evaluating subjective complaints of pain, and stated that after "careful consideration" of such factors, Plaintiff's subjective claims of "totally disabling symptoms cannot be reasonably accepted."  (<u>Id.</u>). The ALJ buttressed his finding by summarizing the medical evidence in the record:

> The physical examination performed on the claimant in March of 2000 revealed a well-developed male in no apparent distress.  Although the claimant complained of chest pain and shortness of breath, a cardiac exam demonstrated no abnormal results.  Cardiac catheterization and a CT scan was performed and the claimant was found to suffer only mild cardiomegaly without pericardial effusion.  The claimant was not found to suffer any significant limitations with his right arm.  The claimant's treating physician also reported that the claimant was in no acute distress.  Based on an employment evaluation completed in November of 2001, the claimant was capable of returning to full-time employment as of April 1, 2001.  Even the most recent evidence from an independent consultative examination revealed no significant abnormalities.  Although the claimant reported difficulty moving his right shoulder, Dr. Patel opined that the claimant was capable of performing fine and gross movements in both hands[2] and he found no

---

[2]The Court notes the discrepancy in the use of the phrase "fine and gross movements" by Dr. Patel as he refers to use of Plaintiff's hands, and the definition provided by Section 1.00(B)(2)(c) of Appendix 1, Subpart P, 20 C.F.R. § 404, which applies to effective use of an upper extremity, and requires that a claimant be capable of "reaching, pushing, pulling, grasping,

13

    significant limitations.

(R. at 21) (internal citations omitted).

  In his analysis of Plaintiff's subjective complaints of back pain, however, the ALJ did not address the objective evidence of back injury and impairment. The most recent medical evidence in the record, dated February 4, 2002, consists of two MRIs of Plaintiff's cervical and lumbar spine. (R. at 208, 210). The MRI of the lumbar spine revealed evidence of disc herniation, nerve root impingement, neural foraminal stenosis, and a Tarlov cyst. (R. at 208). The MRI of the cervical spine revealed evidence of degenerative disease causing moderate right foraminal stenosis. (R. at 210). Although the ALJ cited these reports earlier in his decision, he neglected to discuss these reports in his summary of medical evidence of impairments that could reasonably produce pain. (See R. at 21). While the Court acknowledges the ALJ's discretion to assess and evaluate the credibility of Plaintiff, it is important that the ALJ discuss contrary medical evidence that might undermine his assessment. A court sitting in review of an ALJ determination cannot determine whether substantial evidence exists if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection. Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Here, medical evaluations revealed evidence of degenerative disc disease, disc herniation causing impingement of a nerve root, a Tarlov cyst, neural foraminal stenosis, and lumbosacral arthritis, all of which were not discussed in the ALJ's analysis of pain. (R. at 197-203, 208, 210; See R. at 21). "Where medical evidence . . . support[s] a claimant's complaints of pain, the complaints

---

and fingering," while making no reference solely to use of the hand.

14

should then be given "great weight" and may not be disregarded unless there exists contrary medical evidence." Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993) (citing Carter v. Railroad Retirement Bd., 834 F.2d 62, 65 (3d Cir. 1986); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)). "While there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." Mason, 994 F.2d at 1067 (quoting Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984)). "In determining whether [a claimant] is disabled, [the SSA] consider[s] all . . . symptoms, including pain, and the extent to which [the] symptoms can *reasonably be accepted* as consistent with the objective medical evidence." 20 C.F.R. § 404.1529 (emphasis added). Plaintiff's subjective claim of back pain radiating to his lower extremities is arguably supported by the objective medical findings and spinal MRIs. The ALJ should have described the weight he assigned to this evidence, and explained his reasoning for discounting the evidence in his finding that Plaintiff's subjective complaints of pain were unreasonable.

      The ALJ failed to explain the weight he gave to either the MRIs or any medical opinion concerning Plaintiff's physical abilities based on those MRIs. The only doctor to reference the MRIs and Plaintiff's complaints of back pain was Dr. Gutierrez, but the ALJ relied on Dr. Gutierrez's report solely to assess Plaintiff's mental capacity. (R. at 20). The ALJ cites an independent consultative examination conducted by Dr. Shoen on February 15, 2002 as a medical opinion that does not support Plaintiff's allegations of pain. (R. at 22; see R. at 221-28). This medical opinion, requested by the SSA, required a review of Plaintiff's entire medical file, but there is no indication that Dr. Shoen had access to or reviewed the MRIs. The report did not address any of Plaintiff's back impairments and did not list the MRIs, taken only eleven days

earlier, under the list of evidence that Dr. Shoen considered.  (See R. at 221-28).  Thus, this Court cannot find that the ALJ's decision was based on substantial evidence.  In his opinion, the ALJ did not consider the objective medical evidence of a back impairment in his analysis of back pain, including the MRIs or any medical opinion based on those MRIs.

**III. CONCLUSION**

  For the reasons stated herein, Plaintiff's appeal is granted.  Upon remand, the ALJ should consider each specific relevant listing, highlight the elements that are lacking, and discuss whether a combination of Plaintiff's impairments would be equal in severity to those in the Listing.  Furthermore, the ALJ should reassess the reasonableness of Plaintiff's complaints of pain, discussing specifically the two MRI's conducted in February, 2002.  An appropriate form of order accompanies this Memorandum Opinion.

Dated:  July 11, 2006

               s/ Garrett E. Brown, Jr.
              GARRETT E. BROWN, JR., U.S.D.J.